COLE, Chief Judge,
dissenting.
Ohio law effectively denies the vote to eligible voters who are arrested the weekend before Election Day — after the deadline for confined individuals to submit absentee ballots — and are not released in time to go to the polls to vote (“late jailed voters”). In response to the laws at issue, plaintiff The AMOS Project (“AMOS”), a federation of 22 churches in the Cincinnati area that works to promote voter engagement, diverted its limited resources from its canvassing efforts towards providing *462 additional training to its volunteers and to inform its members about the risks, of being arrested during that period. Because the laws being challenged here forced AMOS to redirect those resources, AMOS suffered a cognizable injury sufficient to confer Article III standing upon it to bring this action.
Under the “ease or controversy” requirement of Article III of the United States Constitution, “a plaintiff in federal court must allege such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court’s remedial powers on his behalf.” Greater Cincinnati Coal, for the Homeless v. City of Cincinnati, 56 F.3d 710, 715 (6th Cir. 1995) (citation and quotation marks omitted). A plaintiff must therefore show “an actual or threatened injury, a causal connection between that injury and the defendant’s conduct, and a likelihood that a court decision in the plaintiffs favor will redress the injury alleged.” Id. A plaintiff “only need[s] to establish standing at the time that its complaint was filed.” Cleveland Branch, NAACP v. City of Parma, Ohio, 263 F.3d 513, 525 (6th Cir.2001).
“An association or organization may assert standing in one of two ways: (1) on its own behalf because it has suffered a palpable injury as a result of the defendants’ actions; or (2) as the representative of its members.” MX Grp., Inc. v. City of Covington, 293 F.3d 326, 332-33 (6th Cir. 2002). An organization may have standing to sue if its interests are directly impaired, but a “mere interest in a problem” that is nothing more than “simply a setback to the organization’s abstract social interests” will not suffice. Greater Cincinnati Coal, for the Homeless, 56 F.3d at 716 (citations omitted). Here, AMOS asserts standing on its own behalf.
“The Supreme Court and this Circuit have found that a drain on an organization’s resources ... constitutes a concrete and demonstrable injury for standing purposes.” Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp., 725 F.3d 571, 576 (6th Cir.2013). As the Supreme Court explained, the expenditure or diversion of resources to counteract policies in conflict with an organization’s goals “constitutes far more than simply a setback to the organization’s abstract social interests.” Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). Thus, we have found a cognizable injury for standing purposes when an organization claimed that it “had to divert its resources, [and] its staff time and energy” in response to a defendant’s unlawful actions. Connor Grp., 725 F.3d at 576. Our sister circuits have similarly held that an organization suffers a concrete injury when, in response to a challenged election statute, it must spend more time or resources educating or redirecting personnel or voters in order to encourage voting. See, e.g., Fla. State Conference of NAACP v. Browning, 522 F.3d 1153, 1165-66 (11th Cir.2008); Crawford v. Marion Cnty. Election Bd., 472 F.3d 949, 951 (7th Cir.2007) (Posner, J.), affd, 553 U.S. 181, 128 S.Ct. 161Ó, 170 L.Ed.2d 574 (2008).
In the case before us, two district judges found that AMOS was forced to turn its resources from its general canvassing efforts towards retraining its volunteers and members about the consequences of being arrested the weekend before Election Day due to the laws at issue. Consistent with our precedent and that of the Supreme Court, those judges concluded that AMOS suffered a “concrete and demonstrable injury” sufficient to establish standing. But although the majority has not determined that those judges clearly erred in their factual findings, see Howard v. City of Beavercreek, 276 F.3d 802, 805 (6th Cir. *463 2002), it departs from the Supreme Court’s instruction that a “drain on [an] organization’s resources [] constitutes far more than simply a setback to the organization’s abstract social interests.” Havens Realty Corp., 455 U.S. at 379, 102 S.Ct. 1114. It also departs from our observation that “the standing requirement of an injury-in-fact is fairly lenient.” Nat’l Rifle Ass’n of Am. v. Magaw, 132 F.3d 272, 293 (6th Cir.1997). We have found that organizations suffer concrete injuries sufficient to confer standing when the defendants’ alleged violations of the law “prevent these organizations from performing their daily operations.” Am. Canoe Ass’n, Inc. v. City of Louisa Water & Sewer Comm’n, 389 F.3d 536, 546 (6th Cir.2004). That is precisely what happened here, yet the majority denies AMOS recourse from the laws that hinder its goal of promoting the right to vote.
The majority contends that AMOS is, in reality, impermissibly litigating the rights of third parties, i.e., potential late jailed voters, but that is not so. As discussed, AMOS has shown a real injury to itself, and standing doctrine affords it the opportunity to seek redress from the courts. It does not matter that resolving its grievance would have the dual effect of affording the vote to late jailed voters because, as the Supreme Court observed, “[t]he Art. Ill judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court’s judgment may benefit others collaterally.” Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). So long as AMOS has' a legitimate interest and ability to advance this litigation, whatever advantage the relief sought will confer on third parties is of no moment.
Nonetheless, AMOS may very well have standing to bring suit on behalf of its members, though it has not made this argument on appeal. In Sandusky County Democratic Party v. Blackwell, 387 F.3d 565 (6th Cir.2004), we concluded that the plaintiff political parties and labor organizations had standing to assert the rights of their members in challenging state election regulations that they alleged could mistakenly cause their ballots not to be counted or prevent the members from voting at all. Although the election had not yet occurred and the organizations “ha[d] not identified specific voters” who might suffer such harm, we observed that “this is understandable” because such issues “cannot be specifically identified in advance,” but “[i]t is inevitable, however, that there will be such mistakes.” Id. at 574. We thus found that the organizations had standing to assert the rights of their members who would vote. Similarly, it is likely that some eligible voters who are part of 10,000-15,000 person membership of AMOS will be late jailed and, because of Ohio’s current laws, be prevented from exercising their right to vote even though AMOS cannot know beforehand if any of its members might be arrested during the weekend before Election Day. Just as the plaintiff organizations in Blackwell were found to have representational standing, so AMOS may succeed on this alternative ground as well.
The majority states, in dicta, that even if AMOS had Article III standing, it would not overcome the prudential limitation on standing to raise the rights of others. Citing Kowalski v. Tesmer, 543 U.S. 125, 129-30, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004), my colleagues note that AMOS does not have a “close relationship” with late jailed voters such that an exception to the limitation applies. But Kowalski does not apply here because, as discussed above, AMOS has not argued that it “rest[s] [its] claim to relief on the legal rights or interests of third parties.” Id. at 129, 125 S.Ct. 564 *464 (quoting Warth, 422 U.S. at 499, 95 S.Ct. 2197). Whether AMOS has prudential standing is not a question before us.
Because AMOS has suffered a cognizable injury sufficient to confer standing upon it to bring this action, and because I agree with the district court’s conclusion with regard to the merits, I would affirm its judgment. I respectfully dissent.